UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

VANCE W.,[1]

                               Plaintiff,            Case # 20-CV-698-FPG

v.                                                DECISION AND ORDER

COMMISSIONER OF SOCIAL SECURITY,

                               Defendant.

## INTRODUCTION

Plaintiff Vance W. brings this action pursuant to the Social Security Act seeking review of the final decision of the Commissioner of Social Security that denied his application for Disability Insurance Benefits ("DIB") under Title II of the Act. ECF No. 1. The Court has jurisdiction over this action under 42 U.S.C. § 405(g).

Both parties moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). ECF Nos. 15, 17. For the reasons that follow, the Commissioner's motion is DENIED, Plaintiff's motion is GRANTED, and this matter is REMANDED to the Commissioner for further administrative proceedings consistent with this opinion.

## BACKGROUND

In February 2018, Plaintiff applied for DIB with the Social Security Administration ("the SSA"). Tr.[2] 78. He alleged disability since July 2012. Tr. 79. On September 5, 2019, Administrative Law Judge Brian Battles ("the ALJ") issued a decision finding that Plaintiff is not

---

[1] Under this District's Standing Order, any non-government party must be referenced solely by first name and last initial.

[2] "Tr." refers to the administrative record in this matter. ECF No. 8.

disabled.  Tr. 10-19.  On April 15, 2020, the Appeals Council denied Plaintiff's request for review.

Tr. 1-4.  This action seeks review of the Commissioner's final decision.  ECF No. 1.

## LEGAL STANDARD

### I.   District Court Review

"In reviewing a final decision of the SSA, this Court is limited to determining whether the

SSA's conclusions were supported by substantial evidence in the record and were based on a

correct legal standard."  *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (quotation marks

omitted); *see also* 42 U.S.C. § 405(g).  The Act holds that a decision by the Commissioner is

"conclusive" if it is supported by substantial evidence.  42 U.S.C. § 405(g).  "Substantial evidence

means more than a mere scintilla.  It means such relevant evidence as a reasonable mind might

accept as adequate to support a conclusion."  *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009)

(quotation marks omitted).  It is not the Court's function to "determine *de novo* whether [the

claimant] is disabled."  *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (quotation marks

omitted); *see also Wagner v. Sec'y of Health & Human Servs*., 906 F.2d 856, 860 (2d Cir. 1990)

(holding that review of the Secretary's decision is not *de novo* and that the Secretary's findings are

conclusive if supported by substantial evidence).

### II.   Disability Determination

An ALJ must follow a five-step sequential evaluation to determine whether a claimant is

disabled within the meaning of the Act.  *See Parker v. City of New York*, 476 U.S. 467, 470-71

(1986).  At step one, the ALJ must determine whether the claimant is engaged in substantial gainful

work activity.  *See* 20 C.F.R. § 404.1520(b).  If so, the claimant is not disabled.  If not, the ALJ

proceeds to step two and determines whether the claimant has an impairment, or combination of

impairments, that is "severe" within the meaning of the Act, meaning that it imposes significant

restrictions on the claimant's ability to perform basic work activities.  *Id.* § 404.1520(c).  If the claimant does not have a severe impairment or combination of impairments, the analysis concludes with a finding of "not disabled."  If the claimant does, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings").  *Id.* § 404.1520(d).  If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement, *id.* § 404.1509, the claimant is disabled.  If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for the collective impairments.  *See id.* § 404.1520(e)-(f).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits him or her to perform the requirements of his or her past relevant work.  *Id.* § 404.1520(f).  If the claimant can perform such requirements, then he or she is not disabled.  *Id.*  If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled.  *Id.* § 404.1520(g).  To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of his or her age, education, and work experience.  *See Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation marks omitted); *see also* 20 C.F.R. § 404.1560(c).

**DISCUSSION**

### I.   The ALJ's Decision

The ALJ analyzed Plaintiff's claim for benefits under the process described above.  At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity from July 2012 (the alleged onset date) to December 31, 2017  (the date last insured).  Tr. 12.  At step two, the ALJ found that Plaintiff had severe impairments of degenerative disc disease, status-post multiple knee surgeries, shoulder rotator cuff tear, and obesity.  *Id.*  At step three, the ALJ found that these impairments did not meet or medically equal any Listings impairment.  Tr. 13

Next, the ALJ determined that Plaintiff retained the RFC to perform sedentary work with additional limitations.  *Id.*  At step four, the ALJ found that Plaintiff was incapable of performing his past relevant work.  Tr. 17.  At step five, the ALJ concluded that there were jobs that existed in significant numbers in the national economy that Plaintiff could perform.  Tr. 17-18.  The ALJ therefore found that Plaintiff was not disabled.  Tr. 18.

### II.   Analysis

Plaintiff argues, among other things, that the ALJ erred by finding that he could sit for 30 minutes if he were able to stand for five minutes "while remaining at the workstation."  Tr. 13. Because the Court agrees, it need not address Plaintiff's other arguments.

At the hearing, Plaintiff testified that he is unable to sit for "very long."  Tr. 34.  He cannot go on long drives, *id.*, and the pain "kills [him]" when he drives to pick up his children from school, which is only seven minutes "down the road."  Tr. 55.  He testified that his doctor had restricted him to employment in which he could "sit down for half an hour, 45 minutes, then . . . have a half an hour, 45 minute break, where [he] was able to walk around."  Tr. 43.  Plaintiff estimated that he could sit "maybe 20 minutes" before needing to "get[] up and walk."  Tr. 55.  He also estimated

that he could stand for five minutes in one spot until needing to move—otherwise, he would "stiffen up." Tr. 56-57.

Later at the hearing, the ALJ asked the vocational expert about the availability of sedentary work assuming the individual also required a job that would allow him to "stand for five minutes after sitting for 30 minutes throughout the workday while remaining at the workstation." Tr. 68. The expert indicated that there were sufficient jobs that could be performed notwithstanding that limitation. *Id.* But, if the individual needed to alternate between sitting and standing at will, that would preclude work insofar as it "would allow the possibility of the individual being off task 15 percent or more of the workday on a consistent basis." Tr. 69. In his decision, the ALJ included a non-exertional limitation that, "[Plaintiff] must be able to stand for five minutes after sitting for 30 minutes while remaining at the workstation." Tr. 13.

As Plaintiff points out, the ALJ failed to provide any explanation as to how he arrived at the particular durations he selected for sit/stand option. *See* Tr. 14-16. The Court concludes that this is an error warranting remand.

It is well-settled that an ALJ's reasoning "must be sufficiently discernible as to allow a reviewing court to ensure that the ALJ employed the proper standards and rendered a decision supported by substantial evidence." *Moss v. Comm'r of Soc. Sec.*, No. 18-CV-365, 2020 WL 896561, at *3 (W.D.N.Y. Feb. 25, 2020). If the ALJ does not explicitly articulate, or a reviewing court cannot otherwise discern, how the ALJ arrived at particular restrictions, it raises the specter that the ALJ either cherry-picked the evidence to justify a pre-ordained conclusion, or interpreted the medical evidence based on his own lay judgment—both of which constitute error. *See, e.g.*, *Younes v. Colvin*, No. 14-CV-170, 2015 WL 1524417, at *8 (N.D.N.Y. Apr. 2, 2015) ("Reviewing courts decry administrative 'cherry picking' of relevant evidence."); *Agostino v. Comm'r of Soc.*

*Sec.*, No. 18-CV-1391, 2020 WL 95421, at *3 (W.D.N.Y. Jan. 8, 2020) ("[A]n ALJ's ability to make inferences about the functional limitations that an impairment poses does not extend beyond that of an ordinary layperson. While an ALJ may render common sense judgments about functional capacity, she must avoid the temptation to play doctor." (internal quotation marks and brackets omitted)).  Put simply, the ALJ must tether the restrictions in the RFC to competent evidence and must provide a sufficient explanation to ensure "meaningful judicial review."  *Moss*, 2020 WL 896561, at *3.

The ALJ's decision does not meet these standards.  In his decision, the ALJ nowhere mentions, let alone discusses, the sit/stand limitation.  While an ALJ's analysis need not be fully explicit in every detail—the Court need only be able to "glean the ALJ's rationale from the record," *Dyana G. v. Comm'r of Soc. Sex.*, No. 19-CV-805, 2021 WL 465249, at *3 (W.D.N.Y. Feb. 9, 2021)—here the Court cannot reasonably discern a rationale for the ALJ's highly specific limitation.

One possibility is that the ALJ construed Plaintiff's hearing testimony to mean that he could sit for thirty minutes before needing to stand for five minutes.  If so, that would be a mischaracterization of the testimony and would justify remand by itself.  *See Cartwright v. Comm'r of Soc. Sec.*, No. 19-CV-6543, 2020 WL 3263447, at *3 (W.D.N.Y. June 17, 2020) ("[I]t is well-settled that an ALJ may not mischaracterize the record, nor rely on such a mischaracterization to meet the substantial evidence test.").  Plaintiff testified that he can sit for twenty minutes—not thirty minutes.  Tr. 55.  He also stated that, after sitting for that period, he needs to "stand *and* move," not just stand.  Tr. 56 (emphasis added).

Another possibility is that the ALJ either partially credited Plaintiff's testimony or relied on other record evidence to arrive at his sit/stand limitation.  The problem is that the ALJ's

analysis—assuming he undertook one—is wholly absent from the decision, which leaves the Court unable to engage in meaningful judicial review.  The ALJ's decision consists of a summary of the medical and opinion evidence in the record and his ultimate conclusions.  And while that evidence might suggest, as the ALJ found, that Plaintiff's limitations were not as severe as he claimed, none of it reasonably supports the highly specific durations that the ALJ included with respect to the sit/stand limitation.  *See, e.g.*, *Cosnyka v. Colvin*, 576 F. App'x 43, 46 (2d Cir. 2014) (summary order) (evidence suggesting that claimant needed regular breaks did not support highly specific limitation that claimant needed a six-minute break every hour); *Wouters v. Comm'r of Soc. Sec.*, No. 19-CV-610, 2020 WL 2213896, at *2 (W.D.N.Y. May 7, 2020) ("Specific RFC assessments, like percentage of time off-task, must be based on evidence in the record, not on an ALJ's own surmise." (internal quotation marks omitted)).  Although the Commissioner cites some record evidence that could support more specific durational limitations, ECF No. 17-1 at 13, 15, the ALJ did not rely on it and, consequently, it cannot be used to salvage his decision.  *See Alazawi v. Comm'r of Soc. Sec.*, No. 18-CV-633, 2019 WL 4183910, at *4 (W.D.N.Y. Sept. 4, 2019) ("This court may not create post-hoc rationalizations to explain the Commissioner's treatment of evidence when that treatment is not apparent from the Commissioner's decision itself." (internal quotation marks omitted)).

Given the absence of reasoned explanation for the sit/stand limitation, remand for further proceedings is warranted.  *See Moss*, 2020 WL 896561, at *3.  On remand, the Commissioner should consider supplementing the record with an opinion of the medical expert.

## CONCLUSION

For all of the reasons stated, the Commissioner's Motion for Judgment on the Pleadings (ECF No. 17) is DENIED, and Plaintiff's Motion for Judgment on the Pleadings (ECF No. 15) is GRANTED.  This matter is REMANDED to the Commissioner for further administrative

proceedings consistent with this opinion, pursuant to sentence four of 42 U.S.C. § 405(g).  The

Clerk of Court is directed to enter judgment and close this case.


       IT IS SO ORDERED.

Dated: July 30, 2021
       Rochester, New York

HON. FRANK P. GERACI, JR.
District Judge
United States District Court